579 N.W.2d 330 (1998)
Susan BELL, Appellant,
v.
COMMUNITY AMBULANCE SERVICE AGENCY FOR NORTHERN DES MOINES COUNTY, Yellow Spring Township, Franklin Township, Benton Township, Huron Township, Washington Township, Jackson Township, The City of Mediapolis, and John Warren Hinson, Appellees.
No. 96-1157.
Supreme Court of Iowa.
May 28, 1998.
*331 Steven J. Crowley and Nicholas G. Pothitakis of Crowley, Bunger & Pothitakis, Burlington, for appellant.
Thomas J. Shields and Jed E. Brokaw of Lane & Waterman, Davenport, for appellees.
Considered by HARRIS, P.J., and CARTER, NEUMAN, SNELL, and ANDREASEN, JJ.
SNELL, Justice.
This appeal by plaintiff raises the legal question as to the standard of care applicable in the operation of an ambulance responding in an emergency situation. The trial court instructed the jury that for plaintiff to establish fault, the ambulance driver's conduct must be proven to be reckless. The jury returned a verdict in favor of plaintiff. On motion by defendants, the district court entered an order for judgment notwithstanding *332 the verdict and dismissed plaintiff's petition. We affirm.

I. Background Facts and Proceedings
On the afternoon of March 17, 1993, John Hinson, a driver for Community Ambulance Service Agency (Community Ambulance), was driving a patient from Mediapolis, Iowa to Burlington Medical Center at Burlington, Iowa. Hinson had been a driver for Community Ambulance for twelve years. As Hinson entered the north end of Burlington, he radioed the Burlington police department dispatcher and requested the traffic lights on Roosevelt Avenue be changed from the normal traffic cycle to flashing red in all directions. As Hinson drove south on Roosevelt Avenue, the dispatcher kept changing the lights to flashing red. Hinson had on his siren and flashing red lights. He was traveling approximately forty miles per hour.
About the same time, the plaintiff, Susan Bell, was on her way to work at Champion Spark Plug. Bell was traveling west on Kirkwood Street. Bell had her windows rolled up and her radio on. The traffic lights that control the intersection changed from their regular cycle to flashing red lights in all directions. As she approached the flashing red lights at the intersection of Kirkwood and Roosevelt, traffic was heavy. Bell stopped her westbound vehicle at the intersection and checked for traffic in both directions. Neither Bell nor Hinson could see each other due to traffic in the southbound left-turn lane of Roosevelt Avenue. Bell proceeded to travel through the intersection when she was hit in the passenger door area by the ambulance driven by Hinson. The force of the impact pushed Bell's car to a grassy area to the southwest of the intersection. The ambulance came to rest in the middle of the intersection.
Bell's car was demolished, and she was extracted from the car by the jaws of life. Bell suffered serious injuries in the crash, including a complex hip fracture, scalp lacerations, a fractured jaw, two broken fingers, glass lacerations on her face, and a closed head wound. Following a police investigation, no traffic citations were issued.
On September 24, 1993, Bell filed a petition for damages against Hinson, Community Ambulance, and the townships which utilized its services. Hinson was dismissed as a defendant immediately before the trial began. At trial, Hinson testified that he estimated he was traveling at a speed in excess of forty miles per hour when he approached the intersection of Kirkwood and Roosevelt. As he approached the intersection, Hinson stated that he slowed down and noted that the intersection was completely clear with no traffic moving in front of him. Proceeding into the intersection, Hinson suddenly saw Bell, immediately applied his brakes and left skid marks. He testified Bell's car came into the intersection suddenly. Hinson maintained he applied his brakes but there was too little time to avoid the accident.
Bell attempted to show that Hinson's driving performance was negligent. Bell asserted that there was no real emergency, since the patient in the ambulance was not in a life-threatening condition. Bell additionally argued that Hinson did not follow his emergency training manual, since he failed to make eye contact with all cross-traffic before entering the intersection. Bell disputed Hinson's claim he had a clear view of the intersection due to the heavy traffic at the intersection. Bell made an offer of proof regarding the testimony of Randy Westfall, an expert in the field of emergency vehicle operation. Westfall testified that Hinson's actions fell well below the accepted standard of care for emergency vehicles. The district court excluded the testimony based on defense counsel's objection that Westfall's testimony involved mixed questions of law and fact.
Following the close of all the evidence, the district court submitted its instructions to the jury. Over Bell's objection, the court submitted an instruction to the jury stating she had the burden of proving that Hinson's conduct was reckless in order to establish fault. The jury returned a verdict against the defendants, finding Bell twenty-five percent at fault and the defendants seventy-five percent at fault. The jury awarded Bell a total damage award of $881,025, including past and *333 future medical expenses and past and future pain and suffering.
The defendants filed a motion for judgment notwithstanding the verdict and a motion for new trial. The district court granted the motion, noting that the duty owed to Bell by Hinson and Community Ambulance did not originate from the normal rules of the road but from Iowa Code section 321.231 (1993), due to the fact the vehicle being operated was an ambulance. The court concluded the jury either misunderstood the instructions regarding recklessness or ignored them, and ruled there was no substantial evidence to support the jury's verdict. The district court entered an order dismissing Bell's petition. Bell has appealed.

II. Issues on Appeal
Bell argues the district court erred in requiring her to prove Hinson's conduct was reckless. Bell argues the only applicability of section 321.231 is whether the defendants could rely on that statute as a legal excuse. Bell asserts Hinson committed negligence per se when he ran through the flashing red lights without stopping. She insists there is no evidence that the condition of the patient in the ambulance amounted to an emergency condition justifying Hinson's speed. Bell notes that there is no mention of recklessness in section 321.231. She claims that the recklessness requirement applies only when a plaintiff relies solely upon section 321.231 as a basis for liability. She contends the jury verdict should be reinstated. Bell lastly contends the district court erred in excluding Westfall's testimony regarding Hinson's conduct.

III. Scope of Review
Iowa Rule of Civil Procedure 243 provides in pertinent part as follows:
On motion, any party may have judgment in that party's favor despite an adverse verdict, or the jury's failure to return any verdict:
....

b. If the movant was entitled to a directed verdict at the close of all the evidence, and moved therefor, and the jury did not return such verdict, the court may then either grant a new trial or enter judgment as though it had directed a verdict for the movant.
Our review of the granting of a motion for judgment notwithstanding the verdict is for the correction of errors at law. Vaughan v. Must, Inc., 542 N.W.2d 533, 538 (Iowa 1996) (citing Iowa R.App. P. 4). Findings of fact made by the district court are binding on appeal as long as they are supported by substantial evidence. Id. (citing Iowa R.App. P. 14(f)(1)). "To overrule the motion, the court must find substantial evidence in support of each element of the non-moving party's claim." Id. Evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion. Briggs v. Board of Dirs., 282 N.W.2d 740, 743 (Iowa 1979).
"In reviewing a judgment notwithstanding the verdict, we view the evidence in the light most favorable to the party against whom the motion is directed." Engstrand v. West Des Moines State Bank, 516 N.W.2d 797, 799 (Iowa 1994). A motion for judgment notwithstanding the verdict must stand or fall on the grounds stated in the motion for directed verdict. Watson v. Lewis, 272 N.W.2d 459, 461 (Iowa 1978).

IV. Emergency Response
At the time of the accident, Hinson was transporting a seriously ill elderly patient to Burlington Medical Center. The patient had been picked up by the ambulance at her home in Mediapolis, Iowa. Her condition was diagnosed by emergency medical technicians. Based on their determination of her condition, Hinson was advised that the delivery of the patient to Burlington Medical Center should be done at a level known as a "Code Two." That procedure involved use of lights located on the ambulance and both lights and siren once the ambulance reached the Burlington city limits. Evidence was adduced that Hinson followed that procedure by activating both the ambulance's flashing red lights and its warning siren.
The district court submitted a special interrogatory to the jury to answer the question whether the ambulance was on an *334 emergency call. The jury answered the interrogatory in the affirmative. Substantial evidence supports this finding that the ambulance driver was responding to an emergency.

V. Standard of Care
The district court instructed the jury that if it found the emergency vehicle was being driven in response to an emergency call, the measure of fault attributable to Hinson to support liability must be based on proof of recklessness. The court analyzed our decision in Morris v. Leaf, 534 N.W.2d 388 (Iowa 1995), and concluded that the recklessness standard adopted there applied to the case at bar.
We have revisited the issue of the standard of care applicable to a driver of an authorized emergency vehicle operated during an emergency situation in Hoffert v. Luze, 578 N.W.2d 681, 684 (Iowa 1998), which we file today. In that case we interpreted Iowa Code section 321.231 regarding emergency vehicles, reviewed our analysis in Morris, and determined the breadth of its application. Our holding was that the legal standard of care applicable to the conduct of an ambulance driver as a driver of an authorized emergency vehicle under Iowa Code section 321.231 is to drive with due regard for the safety of all persons, but the threshold for recovery for violation of that duty is recklessness, not negligence. The district court correctly instructed the jury on this issue.
Plaintiff claims that the recklessness standard of care does not apply because she asserts Hinson committed negligence per se when he ran through the flashing red lights without stopping. She further claims the recklessness standard applies only when Iowa Code section 321.231 is relied on as the sole basis for liability. These arguments have no merit in light of the statutory establishment of the standard of care that applies to these emergency situations.

VI. Application of Recklessness Standard

A. Procedural Background and Findings of Fact
The jury returned a verdict finding that plaintiff proved Hinson was reckless in his operation of the ambulance, entitling plaintiff to a judgment for damages. On motion by defendants, the district court entered a judgment notwithstanding the verdict for defendants. See Iowa R. Civ. P. 243. Because of this ruling, the court did not rule on defendants' supplementary motion for new trial.
In its ruling sustaining the motion for judgment notwithstanding the verdict the court thoroughly reviewed the law defining recklessness and concluded that the facts were unsupportive of a finding of recklessness. The court surmised that "the jury either misunderstood the Court's instructions regarding recklessness or simply ignored the instructions." Viewing the facts, as required, in the light most favorable to the plaintiff, the court said:
At trial of the case at bar, evidence showed that John Hinson started driving fire trucks in 1974 and ambulances in 1981. In 1977 he took an Iowa State Patrol sponsored defensive driving class. From 1981 up to the date of the accident, March 17, 1993, John Hinson estimated he had driven the ambulance from Mediapolis down Highway 61 through Burlington on Roosevelt Avenue at least 200 times and had never had an accident. There was additional testimony that the Community Ambulance Service had never been involved in an ambulance accident prior to the one involving Plaintiff Bell. As the ambulance travelled on Roosevelt Avenue, substantial evidence was adduced that the ambulance was utilizing both its flashing red lights and its warning siren. Roosevelt Avenue is a straight thoroughfare with four lanes. It was daytime and sunny. The traffic on Roosevelt was heavier than the traffic the ambulance encountered on Highway 61 north of Burlington. The ambulance was travelling at 40 miles per hour, and at the most 45 miles per hour between the intersection of Mt. Pleasant Street and the intersection of Kirkwood. As the ambulance approached Kirkwood, it decelerated. At the intersection of Roosevelt and Kirkwood, all traffic lights were flashing red. This included the traffic lights controlling vehicles coming *335 from the west and east. As the southbound ambulance approached the intersection, the driver, as he decelerated, looked to the left to check traffic and then to the right, again to check traffic. All traffic was stopped and the intersection was clear. As the ambulance was about to enter the intersection, Plaintiff Bell's vehicle left the east side of the intersection and crossed through Roosevelt Avenue heading to the west. The ambulance driver saw a blur of white and immediately attempted to apply his brakes. The ambulance struck the passenger side of Plaintiff Bell's vehicle. Substantial evidence is in the record that drivers of other vehicles were able to either hear or see the ambulance as it approached this intersection. The red flashing lights on the ambulance are near its roof, and the ambulance itself sits higher than regular passenger vehicles. Additionally, the ambulance driver testified he had a clear view of the intersection and all traffic was stopped as he approached it. He opined that if he had seen a moving car, he would have immediately braked.

B. Law
In reviewing our cases involving reckless conduct, the district court looked at various sources, including criminal law, workers' compensation law, and other civil law cases. Plaintiff objects to any reference to criminal law because the standard of proof in criminal cases is "beyond a reasonable doubt." Plaintiff also argues that workers' compensation law has no relevance because co-employee liability is based on gross negligence which embraces the concept of wanton neglect, which is not a part of the meaning of "reckless." While we agree these distinctions must be kept in mind, these cases provide some aid in conceptually framing the meaning of "recklessness," and their consideration demonstrates thoroughness by the district court.
In our criminal law chapters of the Iowa Code, "reckless" is defined in section 702.16 as follows:
A person is "reckless" or acts recklessly when the person willfully or wantonly disregards the safety of persons or property.
Regarding involuntary manslaughter, in State v. Torres, 495 N.W.2d 678, 681 (Iowa 1993), we said:
Simply put, for recklessness to exist the act must be fraught with a high degree of danger. In addition the danger must be so obvious from the facts that the actor knows or should reasonably foresee that harm will probablythat is, more likely than notflow from the act.
In State v. Cox, 500 N.W.2d 23, 26 (Iowa 1993), we remanded for entry of a judgment of acquittal on a vehicular homicide charge, finding there was no evidence of speeding or operating the vehicle in an erratic way. By contrast, in another vehicular homicide case we found ample evidence of recklessness where the defendant had actual knowledge the brakes on his car were virtually useless and was warned earlier in the day not to drive it. Nevertheless, he drove the car ten miles over the speed limit, through a red light and into a crosswalk in a school zone, and struck and killed a student, after being unable to stop to avoid the accident. State v. Conyers, 506 N.W.2d 442 (Iowa 1993).
In the workers' compensation field we have said for a finding of gross negligence in a co-employee liability case, there must be:
(1) a knowledge of the peril to be apprehended; (2) knowledge that injury is a probable, as opposed to a possible, result of the danger; and (3) a conscious failure to avoid the peril.
Dudley v. Ellis, 486 N.W.2d 281, 283 (Iowa 1992); accord Johnson v. Interstate Power Co., 481 N.W.2d 310, 321 (Iowa 1992).
In another workers' compensation case involving co-employee liability, we cited Prosser, Handbook of the Law of Torts, as providing meaning for these concepts:
Similar to willful or reckless conduct, "wanton" conduct lies somewhere between the mere unreasonable risk of harm in ordinary negligence and intent to harm.... "The usual meaning assigned to `willful,' `wanton,' or `reckless,' according to taste as the word used, is that the actor has intentionally done an act of an unreasonable character in disregard of a risk known to or so obvious that he must be *336 taken to be aware of it, and so great as to make it highly probable that harm would follow."
Thompson v. Bohlken, 312 N.W.2d 501, 504-05 (Iowa 1981) (quoting William L. Prosser, Handbook of the Law of Torts § 34, at 185 (4th ed.1971) (emphasis added)).
Other cases examined by the trial court involved Iowa's "guest statute," which is no longer Iowa law, that was applied to tort cases involving liability of an automobile driver to a passenger. However, the meaning of "recklessness," repeatedly examined in those cases, is distinctly relevant to the issue of reckless conduct in the case at bar.
In Winkler v. Patten, 175 N.W.2d 126, 129 (Iowa 1970), we agreed with the trial court that there was a jury question regarding recklessness. Evidence supporting recklessness included the vehicle's speed of more than twice the speed limit coupled with the driver looking away from the road while entering a curve the driver knew was there. In King v. Barrett, 185 N.W.2d 210, 214 (Iowa 1971), we concluded there was sufficient evidence to generate a jury question on recklessness based on proof the driver had the accelerator to the floor of his automobile as it came over the last of three knolls on a gravel road, at which time the automobile entered a heavily-travelled intersection, thereby causing a collision with a vehicle coming from the right.
In Hazelo v. Mesenbrink, 469 F.2d 252 (8th Cir.1972), the Eighth Circuit, applying Iowa's guest statute, affirmed the district court's grant of judgment notwithstanding the verdict for the defendant-driver. In Hazelo, the driver stopped his vehicle, then proceeded to cross a four-lane divided highway. The driver was inattentive and did not see a vehicle approaching from the right and failed to stop, even though a passenger warned the driver of the impending collision. Hazelo, 469 F.2d at 254. It was determined that the driver was negligent; however, his momentary inattention was not sufficient to generate a jury question on recklessness. Id. In Oehlert v. Kramer, 205 N.W.2d 723, 725 (Iowa 1973), our court determined that reasonable minds might conclude it was reckless for the defendant to drive his automobile at speeds up to ninety miles per hour in a fifty-mile-per-hour zone at night on a road he knew contained four curves. In Vogel v. Reeg, 225 N.W.2d 132, 137 (Iowa 1975), we concluded there was no substantial evidence of recklessness and reversed the trial court where the defendant was "momentarily negligent" in failing to keep a proper lookout and failing to yield one-half of the road upon meeting an oncoming vehicle. We reached this conclusion because there was no proof of excessive speed and the defendant "made no statement nor showed any attitude indicating... a heedless disregard for or indifference to the rights of others." Vogel, 225 N.W.2d at 137. In Vogel, we reiterated our definition of recklessness from Shoop v. Hubbard:
Reckless operation of a motor vehicle as used in our "guest statute", section 321.494, Code 1962, means more than negligence, more than want of ordinary care. It means, proceeding with no care coupled with disregard for consequences, the acts must manifest a heedless disregard for or indifference to the rights of others in the face of apparent danger or so obvious the operator should be cognizant of it, when the consequences of such actions are such an injury is a probability rather than a possibility. Recklessness may include willfulness or wantonness, but if the conduct is more than negligence it may be reckless without being willful and wanton. The elements of recklessness are: (1) No care coupled with disregard for consequences, (2) there must be evidence of defendant's knowledge, actual or chargeable, of danger and proceeding without any heed of or concern for consequences, and (3) the consequences of the actions of the driver are such that the occurrence of injury is a probability rather than a possibility.
Shoop v. Hubbard, 259 Iowa 1362, 1364, 147 N.W.2d 51, 53 (1966); see also Pieper v. Harmeyer, 235 N.W.2d 122, 129 (Iowa 1975) (finding driver's actions did not rise to level of recklessness).
In Morris v. Leaf, we cited with approval the New York Court of Appeals case Saarinen v. Kerr, 84 N.Y.2d 494, 620 N.Y.S.2d 297, 644 N.E.2d 988 (1994). In that case the court interpreted a statute similar to our *337 Iowa Code section 321.231, holding that a police officer's conduct was not reckless in pursuing a driver-suspect who crashed into and injured the plaintiff. Summary judgment granted to one of the defendants was affirmed because there was no triable or reasonable view of the record to support a possible violation of the recklessness statutory standard of care in a municipal emergency context. Saarinen, 620 N.Y.S.2d at 301-02, 644 N.E.2d at 992-93. In Campbell v. City of Elmira, 84 N.Y.2d 505, 620 N.Y.S.2d 302, 644 N.E.2d 993 (1994), the court found that there were sharply disputed facts and inferences that justified upholding a jury's finding of recklessness, thus distinguishing Saarinen. Campbell, 620 N.Y.S.2d at 306-07, 644 N.E.2d at 997-98. The emergency vehicle in Campbell was a fire truck that drove through a red light with its sirens blaring and lights flashing and was hit in the rear wheel well by plaintiff's motorcycle which was proceeding through a green light. Id. 620 N.Y.S.2d at 303, 644 N.E.2d at 994. The decision, even when grounded on a finding of disputed facts, was a four to three decision, the dissenters arguing that the case was no different in principle and was controlled by the law in Saarinen. Id. 620 N.Y.S.2d at 309, 644 N.E.2d at 1000 (Titone, J., dissenting).
We note that in the case at bar the facts are not disputed. A further distinction is apparent in that the plaintiff in Campbell had a green light, whereas Bell in the instant case did not and proceeded in the face of flashing red traffic control lights.
In Krell v. May, 260 Iowa 518, 525, 149 N.W.2d 834, 839 (1967), in discussing the elements of recklessness, we said:
Perhaps in referring to these elements we have neglected to stress the primary objective we seek, namely, the driver's mental attitude as disclosed by his acts and conduct immediately prior to and at the time of the accident.
The trial court cited Krell and made the following conclusions:
The Court would note that Hinson had driven the route hundreds of times in the same manner as he was on March 17, 1993, with no accident ever having occurred. He followed the same procedure as had been employed numerous times in the past without incident. It cannot be said Hinson created a situation in which the risk of harm to others was probable based on this past record of success in following the same driving procedure. Additionally, the occurrence of an intersection collision would not appear to be a probable (as opposed to merely possible) result of Hinson's actions in view of the fact that if an accident occurred, he would also be subject to the same peril. The speed at which Hinson was operating the ambulance was not excessive given the conditions, width, structure of the highway, weather, and other attendant circumstances. Although the Plaintiff contends that traffic was heavy, this is not necessarily supported by substantial evidence. Apparently, traffic was "heavier" than it had been further north of the intersection. In any event, the ambulance had a clear lane through which it could proceed through the intersection, and all surrounding traffic had stopped. It was a bright, sunny day and the road was straight. All other witnesses who were also in the vicinity of the intersection clearly saw or heard, or both saw and heard, the ambulance. Hinson decelerated as he approached the intersection. There was no evidence he was inattentive. In fact, it is undisputed that the driver carefully looked to his left and right to check traffic from both directions (traffic which faced red flashing stop lights). As Hinson approached the intersection all traffic was stopped. Because all traffic was stopped and the lane ahead was clear, Hinson cannot be said to have had a conscious knowledge of a dangerous situation. No danger was apparent. Hinson could not know that Susan Bell would attempt to traverse this intersection in front of the path of this ambulance. Hinson had no warning or actual knowledge that a dangerous situation was about to be created by Plaintiff's actions. Immediately prior to and at the time of the collision, Hinson was alert, careful, cognizant of his environment and the surrounding traffic and was operating the ambulance in such a way as he had done the previous twelve years *338 without ever having been involved in an accident. Under no stretch of the imagination can it be concluded that the driver of the ambulance was reckless.
(Citations omitted.)
We have carefully reviewed the evidence and analysis by the trial court and arrive at the same conclusion. The evidence in this case cannot be said to constitute substantial evidence of recklessness in the driving conduct of Hinson to support the jury's verdict of defendants' liability to plaintiff. Although it is always a difficult judicial task to negate a jury's verdict, the district court was correct in granting the defendants' motion for judgment notwithstanding the verdict.

VII. Expert Testimony
Plaintiff offered the testimony of Randy Westfall, who is a certified law enforcement instructor and graduate of the Iowa Law Enforcement Academy. He taught safe emergency driving to police officers at the Nebraska Law Enforcement Academy.
Westfall's testimony was offered to show that in his opinion, under the circumstances of the accident, Hinson's actions were highly dangerous and likely to cause injury. Testimony was elicited regarding the speed of the ambulance necessary for the safe operation under the circumstances and the appropriateness of Hinson's conduct. Objections by defendants that the testimony improperly mixed questions of law and fact and called for legal conclusions were sustained. The proffered testimony was excluded, which plaintiff claims constitutes error.
We have frequently stated that "a trial court is entitled to exercise a broad discretion in the admissibility of expert testimony." United Cent. Bank v. Kruse, 439 N.W.2d 849, 852 (Iowa 1989). "In general an expert witness is not permitted to state a legal conclusion." Terrell v. Reinecker, 482 N.W.2d 428, 430 (Iowa 1992) (citing Miller v. Bonar, 337 N.W.2d 523, 529 (Iowa 1983)). "This rule is modified somewhat if a legal issue is raised in such a way as to become a necessary operative fact; when however the legal conclusion is a rule of decision to be applied by the judge or jury in deciding the case, it is not a proper subject for expert testimony." Id. (citing United Cent. Bank, 439 N.W.2d at 852); see also Oldham v. Shenandoah Community Sch. Dist., 461 N.W.2d 207, 208 (Iowa App.1990) ("[E]xperts may not give opinions on questions of law or questions of law mixed with facts.").
When evaluating the exclusion of expert testimony, "great deference is given to the decision of the trial court." Oldham, 461 N.W.2d at 209. "The reviewing court will not interfere unless clear abuse is shown." Id. (citing Townsend v. Mid-America Pipeline Co., 168 N.W.2d 30, 35 (Iowa 1969)). "Courts typically have not, and will not interfere with a court's decision to exclude expert testimony unless the discretion `has been manifestly abused to the prejudice of the complaining party.'" Id. (quoting Grismore v. Consolidated Prods. Co., 232 Iowa 328, 342, 5 N.W.2d 646, 654 (1942)).
We find that there has been no abuse of discretion in the trial court's exclusion of the proffered expert testimony. The proffered testimony, when taken in context, stated a legal conclusion and, moreover, would not have changed the result of the decision to grant the motion for judgment notwithstanding the verdict.
The judgment of the district court is affirmed.
AFFIRMED.