Jack E. KLEIN, Appellee,

v.

CHICAGO CENTRAL & PACIFIC
RAILROAD COMPANY,
Appellant.

No. 97–1387.

Supreme Court of Iowa.

June 3, 1999.

Rehearing Denied June 23, 1999.*

* Neuman and Ternus, JJ., taking no part.

Edward J. Krug of the Krug Law Firm, Cedar Rapids, for appellant.

Keith Queensen and Robert Dolan of Yaeger, Jungbauer, Barczak & Roe, Ltd., Minneapolis, Minnesota, and Richard G. Hileman, Jr. of Simmons, Perrine, Albright & Ellwood, P.L.C., Cedar Rapids, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LAVORATO, NEUMAN, and CADY, JJ.

HARRIS, Justice.

The railroad appeals an adverse judgment in this suit brought by an injured employee. The railroad challenges the sufficiency of the evidence to support the award, and assails a number of evidentiary rulings. We find the evidence, though vigorously controverted, ample to support a finding of liability. And, because we find no abuse in the evidentiary rulings, we affirm.

Defendant Chicago Central & Pacific Railroad Company (CC&P) is engaged in interstate commerce as a carrier by rail. At the time in question plaintiff Jack Klein was, and had long been, a railroad employee engaged in track and rail maintenance. On an evening in March 1994, having been directed by CC&P, Klein and two coworkers proceeded to the scene and undertook the repair of a broken rail. This required replacement of a broken thirty-nine foot section of rail that weighed approximately 1600 pounds. In order to roll the replacement rail into place, Klein applied simple leverage by using a common handheld device called a rail fork. Although CC&P assails the method Klein chose for this task, the jury was entitled to accept Klein's testimony that he proceeded as he had learned on the job and in accordance with the methods he used during all his thirty-years' experience with CC&P. The rail fork and all other materials and equipment used in the repair, it seems obvious, were furnished for the purpose by CC&P. After the rail was placed Klein could not straighten his back, and his leg was frozen into place.

The next morning Klein called his supervisor to report he had hurt his back. Pursuant to company policy, Kenneth McMains, the company physician, examined Klein and recommended he see an orthopedic surgeon. The following month Klein underwent back surgery. David Beck, the physician who performed the surgery, recommended Klein seek employment outside the railroad industry. Klein was later evaluated for functional capacity

and was found physically unqualified for the sort of heavy labor he had previously performed.

Klein thereafter filed this suit for damages against CC&P, claiming negligent supervision, the failure to provide proper equipment or reasonably safe tools, lack of sufficient manpower, and failure to provide a safe place to work. He sought damages for lost past and future wages, pain and suffering, and loss of earning capacity. His claims were brought under 45 U.S.C. §§ 51–60 commonly known as the Federal Employers' Liability Act (FELA). CC&P denied the allegations, raising as defenses failure to mitigate damages, foreseeability, and sole proximate cause. A jury verdict was returned in favor of Klein. The matter is before us on CC&P's appeal.

■■■ I. We accord the trial court broad discretion in the admissibility of expert testimony. *Bell v. Community Ambulance Serv. Agency for N. Des Moines County,* 579 N.W.2d 330, 338 (Iowa 1998). We interfere only if clear abuse is shown. *Id.*

II. Section 1 of FELA provides in relevant part that

[e]very common carrier by railroad . . . shall be liable in damages to any person suffering injury while . . . employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier.

45 U.S.C. § 51.

■■ Although FELA cases are not routinely encountered in our courts, it is clear that Congress intended to greatly lower the bar for injured workers covered by the act, and to liberally allow recovery in cases that would not be allowed under general principles of tort law. *See* 32B Am.Jur.2d *Federal Employer's Liability Act* § 2 (1996). The expanded metes and bounds of railroad liability under FELA were set in the celebrated case of *Rogers v. Missouri Pacific Railroad,* 352 U.S. 500, 506–

07, 77 S.Ct. 443, 448–49, 1 L.Ed.2d 493, 499 (1957):

Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities. The statute expressly imposes liability upon the employer to pay damages for injury or death due "in whole or *in part*" to its negligence.

FELA has been construed to

require carriers to furnish employees with equipment that is reasonably safe and suitable, and liability may be imposed for injuries or death resulting from the use or maintenance of defective, unsafe, or inadequate tools, machinery, appliances, and vehicles.

32B Am.Jur.2d *Federal Employers' Liability Acts* § 30, at 876 (1996). It is well established that liability under the act arises from "failing to promulgate and enforce appropriate rules and regulations [and] in neglecting to retain a sufficient number of employees to insure the safety of individual workers. . . ." *Id.* § 29, at 874.

■■ Under the relaxed burden appropriate for FELA cases, there was, most assuredly, ample support in the record for jury findings that CC&P failed to furnish

Klein a working place that was reasonably safe, that the rail fork qualified as insufficient equipment to roll the 1600–pound rail into place, that an inadequate number of workers was assigned to the task, and that CC&P failed to adequately train the workers, including Klein himself, in the safe operation of the boom truck used at the repair scene. The case seems textbook for obvious liability under FELA.

CC&P's challenge to the sufficiency of the evidence is without merit.

■ III. CC&P vigorously complains of a ruling which excluded the testimony of Kenneth McMains, the company's regular physician who, as mentioned, examined Klein soon following his injury. CC&P is highly critical of the exclusion, feeling blindsided because, it is argued, Klein was able to mislead the jury into believing CC&P had unfairly and stubbornly thwarted his attempts to return to work. CC&P argues that McMains' testimony would have made it clear that Klein's injury prevented him from returning.

■ After bringing suit, Klein, on July 12, 1996, designated McMains as an expert witness pursuant to Iowa rule of civil procedure 125(a), but later decided not to call him. This change of plan was signaled when, on February 24, 1997, Klein filed his pretrial statement which omitted listing McMains as an expert witness. On March 5, 1997, some twelve days before trial was set to—and did—begin, CC&P filed an application to call McMains as its witness, not as an expert, but as a treating physician. This late designation obviously ran afoul of Iowa rule of civil procedure 125(c) (requiring supplementation by giving names of experts expected to be called at trial "as soon as practicable, but in no event less than thirty days prior to the beginning of trial except on leave of court"). *Lambert v. Sisters of Mercy Health Corp.*, 369 N.W.2d 417, 421 (Iowa 1985). Failure to comply with the rule may result in sanctions. *Id.* Exclusion of evidence is the most severe sanction avail-

able under the rule, and is justified only when prejudice would result. *Schoenfeld v. FDL Foods, Inc.*, 560 N.W.2d 595, 598 (Iowa 1997). Exclusion should not be imposed lightly; other sanctions are available such as continuation of the trial or limitation of testimony. *Lambert*, 369 N.W.2d at 421. The purpose of rule 125 is to avoid surprise to litigants and to allow the parties to formulate their positions on as much evidence as is available. *Id.* at 422.

Contrary to CC&P's contention otherwise, McMains was not Klein's treating physician. He saw Klein only twice—both times at CC&P's direction. The first time, already mentioned, was on March 21, 1994, following Klein's injury. The second time was November 22, 1996, soon after Klein successfully moved to postpone the trial while he explored the possibility of returning to work. McMains examined Klein only because he served as CC&P's company physician. *See Day v. McIlrath*, 469 N.W.2d 676, 677 (Iowa 1991) (treating physician ordinarily focuses on "purely medical questions rather than on the sorts of partially legal questions which may become paramount in the context of a lawsuit").

At the time of McMains' last examination, CC&P still had more than thirty days to serve notice if it wished to call him as an expert. CC&P did not supplement its witness list to include McMains until March 5, 1997, just twelve days before trial began. McMains' report on his examination of Klein was completed December 11, 1996. At that point, CC&P had more than two months in which it could have filed a timely (thirty days prior to trial) listing of McMains as a witness. We have upheld the exclusion of experts because of delays shorter than that. *See Stephenson v. Furnas Elec. Co.*, 522 N.W.2d 828, 831 (Iowa 1994) (expert excluded because plaintiff had decided in early October to call the witness but did not designate the witness until November 5).

The trial court correctly held that CC&P's March 5, 1997 notification was not

"as soon as practicable" and was clearly not within thirty days prior to trial. The court found that CC&P's late interest in substituting McMains as its expert was generated by a rising disappointment with the testimony it could expect from the expert it had previously listed. Notwithstanding CC&P's belief that it was unfairly blindsided in the matter, we cannot find the trial court's assessment of CC&P's real motive was incorrect or that the challenged ruling was an abuse of discretion. Neither can we disagree with the trial court's conclusion that to allow the late designation of McMains—just days before trial began—would have prejudiced Klein in trial preparation because it was past time for discovery. The challenge is without merit.

IV. CC&P attempted a second time to call McMains, this time as a rebuttal witness. The claim is that McMains should have been allowed to testify concerning Klein's condition in order to disprove Klein's own testimony that he knew of "no reason" he could not go back to work as track foreman with CC&P. CC&P insists Klein knew full well that his injured physical condition prevented it, and that McMains' testimony was necessary to convince the jury of this fact.

For good reason, we accord trial courts almost unfettered discretion in sorting through disputes under rule 125. *Beeman v. Manville Corp. Asbestos Disease Comp. Fund,* 496 N.W.2d 247, 253–54 (Iowa 1993). The trial court in this case might well have allowed the testimony as rebuttal evidence. We however cannot say with any certainty that, in stating he knew of no reason he could not go back to work, Klein was responding on the basis of medical reports, or on the basis of his own personal assessment. We find no abuse.

V. CC&P assails various other discretionary evidentiary rulings. To detail and explain them would unduly extend this opinion without yielding any useful prece-

dent. We have considered them and find them without merit.

**AFFIRMED.**