# IN THE COURT OF APPEALS OF IOWA

No. 22-1026
Filed June 7, 2023

**JAMES R. PENNY,**
Plaintiff-Appellant,

**vs.**

**CITY OF WINTERSET and CHRISTIAN DEKKER,**
Defendants-Appellees.
_____

Appeal from the Iowa District Court for Madison County, Stacy Ritchie, Judge.

A plaintiff appeals an adverse summary judgment ruling that dismissed his claims for injuries sustained after a collision with a police cruiser. **REVERSED AND REMANDED.**

Gary Dickey of Dickey, Campbell & Sahag Law Firm, PLC, Des Moines, for appellant.

Zachary D. Clausen and Douglas L. Phillips of Klass Law Firm, L.L.P., Sioux City, for appellees.

Heard by Greer, P.J., and Badding and Chicchelly, JJ.

**BADDING, Judge.**

In this appeal from an adverse summary-judgment ruling, we are asked to decide whether the district court erred in concluding as a matter of law that a police officer who was responding to an emergency was not reckless in driving through a stop sign at a highway intersection and crashing into a vehicle. *See* Iowa Code § 321.231 (2020). Because reasonable minds could differ on how this issue should be resolved, we reverse the court's ruling and remand for further proceedings.

## I.     Background Facts and Proceedings

The crash that led to this litigation occurred just after sunset on an overcast evening in March 2018 at the intersection of Highway 92 and N. 10th Street in Winterset. The speed limit on Highway 92, which runs east to west and has no traffic control devices, is fifty-five miles per hour. N. 10th Street has a twenty-five-mile-per-hour speed limit, with stop signs controlling north- and south-bound traffic. N. 10th Street turns into Cedar Bridge Road north of Highway 92. The following image depicts the intersection, marked by the red pin, where the collision occurred:



At roughly 8:20 p.m., Officer Christian Dekker of the Winterset Police Department was at home eating supper when he received an emergency service

call for an unconscious person at a nearby motel on Cedar Bridge Road. The crash occurred minutes later while Dekker was responding to that call.

Traffic was light as Dekker headed north-bound on N. 10th Street toward its intersection with Highway 92 in his police cruiser—with his emergency lights and sirens activated. Meanwhile, James "Judd" Penny was traveling west-bound on Highway 92 in his 1967 Chevrolet pickup, on his way to a high school rugby game. When Penny was a few hundred yards away from the intersection at N. 10th St., he stopped for a second unit that was also responding to the emergency.[1] Penny got back on the highway and "was back up to full speed"—fifty to fifty-five miles per hour—"fairly quickly after that." As Penny neared the intersection, Dekker blew through the stop sign at N. 10th Street and into the highway without stopping, broadsiding Penny's pickup with the cruiser's front end. Neither saw the other coming. Dekker suffered a laceration to his scalp, while Penny's injuries were more severe.

In March 2020, Penny sued the City of Winterset and Dekker, alleging Dekker's recklessness in the scope of his employment as a police officer caused Penny damages. In time, the defendants moved for summary judgment, arguing "[t]here is no evidence from which a reasonable jury could find that . . . Dekker was reckless." They claimed it was undisputed that Dekker "believed he had a clear view of the intersection" with "no reason to think that the way he was driving was likely to result in harm to someone, or cause an accident" because he "did not know that James Penny was approaching from his right."

---

[1] The approximate point where Penny thought he pulled over for the other unit is shown by the blue dot on the above image.

In support of that claim, the defendants pointed to a witness statement Dekker wrote a couple of hours after the crash, in which Dekker said:

> Approximately 3-4 blocks from the intersection of Highway 92 and 10th Street, I saw as Officer Camp turned north onto Cedar Bridge road also running code.  I looked east to clear traffic, you can see west bound traffic for 1/2–1/4 mile as you approach the intersection.  I didn't see any vehicles approaching.  I remember seeing 1 single light, however, I believed it was part of a farm house on the North side of 92.  As I approached the intersection of 10th & 92, I cleared left (East Bound) and proceeded into the intersection.  As I entered the intersection, there was a loud bang . . . .

At his deposition, Dekker explained that by "clearing the intersection," he meant

> that I looked to my right, to my left.  Typically I would look several times.  In this instance I can see right for quite a ways, and so once I cleared right and I determined there was nothing approaching me from the right, then I went left, saw . . . one vehicle to the left and determined it was far enough away and then proceeded through the intersection.

Dekker's deposition ended with his conclusion "that there was nobody there.  Obviously Mr. Penny was there, but it was my determination that he was not there when I cleared to the right."  Based on these facts, the defendants argued in their supporting brief that Dekker drove "with due regard for the safety of all persons" and not with "reckless disregard for the safety of others," so the defendants could not be held liable.  *See id.* § 321.231(5).

Penny resisted, arguing a genuine issue of material fact existed and should be resolved by a jury on whether Dekker acted recklessly.  He disputed whether Dekker "look[ed] to the east before crossing Hwy 92 in derogation of the stop sign on 10th St., because if he had looked he would have seen Judd Penny's truck on the highway."  And Penny contended that Dekker "did not look for cross traffic for

a sufficient period of time to perceive whether any cars were on Hwy 92 before crossing against the stop sign."

In support of his resistance, Penny offered a crash data retrieval graph from Dekker's cruiser, which showed that Dekker was traveling at nearly sixty miles per hour with the accelerator throttled at about thirty-five percent fifteen seconds before the crash. The brake was applied in four separate intervals in the thirteen seconds right before the crash, with vehicle speed decreasing to about thirty miles per hour in that interval. But in the last second before the crash, Dekker agreed at his deposition that he accelerated through the intersection, explaining: "I was braking on the way down the hill, and then once I would deem that the intersection was clear, I would cover the accelerator with my foot until I believed it was okay to proceed through that intersection and then I would accelerate through the intersection, yes." The technical collision investigation from the Iowa State Patrol confirmed Dekker's recollection, noting that data from the cruiser's "black box" showed

> that approximately 5 seconds before the crash, Officer Dekker was traveling at 44 mph and was applying the brake. Approximately 2 seconds before the crash, Officer Dekker was traveling 30 mph with no brake applied. At the time of the collision, Officer Dekker was traveling approximately 25 mph with no brake applied.

Penny submitted two expert reports with his resistance. Forensic expert David Billington discussed Dekker's speed in the seconds before the collision and found that he "made no effort to stop or proceed with caution at the stop sign, but rather enter[ed] the intersection with approaching cross traffic at a speed which was higher than the posted 25 mph speed limit." He also concluded "[t]he evidence is clear that Mr. Penny was approaching the intersection and was fully available to

be seen by Officer Dekker," and Dekker "did not afford himself the time necessary to properly discern [whether] the lights he saw was a building or an approaching vehicle." Billington believed Dekker should have slowed down, assessed the intersection, and determined whether approaching vehicles were yielding. He concluded that Dekker caused the collision "by a lack of experience or the intentional disregard for the safety of the general motoring public" and stated his actions were reckless.

Penny's other expert witness, accident reconstructionist Todd Hall, said that after reviewing law enforcement documents and video,[2] he would "[o]pine that there is no evidence to indicate that Officer Dekker was unable to see Judd Penny in the several seconds leading up to the collision—that he had enough time to stop because Penny was able to be seen." At his deposition, when asked whether his truck's headlights were working, Penny testified: "I know in the video you can see the lights pretty clearly . . . ." Later, he reiterated that he had reviewed "a video of the approaching police car, and you can see my—my truck and the two lights." Penny continued: "The camera shows [a] full view of the highway. He would have had full view of me. He was up on the hill, like an eagle eye view. He could see everything." For his part, Penny said that he was "just proceeding through the intersection as [he] always would" with no expectation that somebody would "be coming through the stop sign." As he looked back on the accident, Penny "counted the seconds and from the time that [Dekker] was coming down the hill and would have seen me and the rate of speed that I was going, there was just no time."

---

[2] No videos, from the police cruiser's dash cam or otherwise were submitted to the district court as part of the summary judgment record.

A brief hearing was held in May 2022, following which the district court issued a ruling granting the defendants' motion for summary judgment and dismissing the action. Relying on *Bell v. Community Ambulance Service Agency for Northern Des Moines County*[3] and *Estate of Fritz v. Henningar*,[4] the court reasoned that because Dekker did not have to navigate through traffic, did not accelerate as he went through the intersection, and "did not have reason to believe that any vehicle nearby was unlikely to yield to his emergency lights and siren," "his assumption that the path in front of him would remain clear was reasonable." The court concluded that "no reasonable jury could find that [Dekker's] driving was reckless under Iowa Code section 321.231." Penny appeals.

## II.    Standard of Review

"The standard of review for district court rulings on summary judgment is for correction of errors of law." *Kunde v. Est. of Bowman*, 920 N.W.2d 803, 806 (Iowa 2018). Summary judgment is appropriate only when the moving party has shown "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). "In determining whether a grant of summary judgment was appropriate, we examine the record in the light most favorable to the nonmoving party, drawing all legitimate inferences that may be drawn from the evidence in his or her favor." *Homan v. Branstad*, 887 N.W.2d 153, 163–64 (Iowa 2016). "Where reasonable minds can differ on how an issue should be resolved, a fact question has been generated,

---

[3] 579 N.W.2d 330 (Iowa 1998).
[4] 19 F.4th 1067 (8th Cir. 2021); No. C19-2046-LTS, 2020 WL 6845944 (N.D. Iowa Nov. 20, 2020).

and summary judgment should not be granted." *GreatAm. Fin. Servs. Corp. v. Natalya Rodionova Med. Care, P.C.*, 956 N.W.2d 148, 153 (Iowa 2021) (citation omitted).

### III.  Analysis

Iowa Code section 321.231(1) "provides liability protections to drivers of emergency vehicles in certain situations," including where, as here, the driver of an authorized emergency vehicle is "responding to an emergency call." *Martinez v. State*, 986 N.W.2d 121, 123 (Iowa 2023).  Police vehicles using an audio or visual signaling device, like Dekker was, may "[p]roceed past a . . . stop sign, but only after slowing down as may be necessary for safe operation," and "[e]xceed the maximum speed limits so long as the driver does not endanger life or property."[5]  Iowa Code § 321.231(3), (4).  These protections do not, however, "relieve the driver of an authorized emergency vehicle . . . from the duty to drive . . . with due regard for the safety of all persons, nor shall such provisions protect the driver . . . from the consequences of the driver's . . . reckless disregard for the safety of others."  *Id.* § 321.231(5).  "An emergency vehicle operator who harms another person by driving with reckless disregard for the safety of others thus may be held liable for civil damages."  *Martinez*, 986 N.W.2d at 124.

A plaintiff seeking recovery based on actions of a driver of an authorized emergency vehicle must show the protected actions were performed in a reckless manner.  *See Hoffert v. Luze*, 578 N.W.2d 681, 685 (Iowa 1998).

> To prove recklessness under the statute, a plaintiff must show that the officer "has intentionally done an act of an unreasonable

---

[5] It is undisputed that Dekker was driving an emergency vehicle with his lights and siren activated while responding to an emergency call.

character in disregard of a risk known to [the officer] or so obvious that [the officer] must be taken to have been aware of it." And even then, the officer can only be liable if the dangerous act was "so great as to make it highly probable that harm would follow."

*Martinez*, 986 N.W.2d at 124 (alterations in original) (internal citation omitted). This is a difficult standard to meet, *id.* at 125, as shown by the two cases the district court relied on in entering summary judgment against Penny—*Bell* and *Fritz*.[6]

*Bell* involved the question of whether an ambulance driver acted recklessly when transporting a patient to a medical center. *See* 579 N.W.2d at 331. On his way to the center, the driver radioed dispatch "and requested the traffic lights on Roosevelt Avenue be changed from the normal traffic cycle to flashing red in all directions." *Id.* at 322. Dispatch complied with the request, and the driver proceeded south on Roosevelt Avenue at about forty miles per hour. *Id.* At the same time, the plaintiff was traveling west on Kirkwood Street, with "her windows rolled up and her radio on." *Id.* "As she approached the flashing red lights at the intersection of Kirkwood and Roosevelt, traffic was heavy." *Id.* The plaintiff

---

[6] These appear to be the only cases under section 321.231 on the issue of recklessness in an emergency response. There are other cases implicating the statute that involve high-speed chases but, because of the factual differences between that type of situation versus emergency responses, they provide little guidance on the question presented here. *See Martinez*, 986 N.W.2d at 122–23; *Morris v. Leaf*, 534 N.W.2d 388, 388–91 (Iowa 1995); *Dooley v. City of Cedar Rapids*, No. 09-1926, 2011 WL 1135794, at *1–6 (Iowa Ct. App. Mar. 30, 2011).

*McClennan v. Orlando Ramirez* is an emergency response case, but the section 321.231 protections did not apply there because the officer was not using his lights or siren. *See* No. 18-1974, 2019 WL 2375244, at *3–4 (Iowa Ct. App. June 5, 2019). *Hoffert* is an emergency response case as well, but it only clarified that recklessness is the applicable standard of care, without applying that standard. *See* 578 N.W.2d at 685. Because *Hoffert* overruled the negligence standard that had been applied in past cases, the emergency response cases predating *Hoffert* are also not that helpful. *See id.* (*overruling Rush v. Sioux City*, 240 N.W.2d 431 (Iowa 1976), *City of Cedar Rapids v. Moses*, 223 N.W.2d 263 (Iowa 1974), *and Wetz v. Thorpe*, 215 N.W.2d 350 (Iowa 1974)).

stopped at the intersection and checked for traffic in both directions but, due to traffic, neither she nor the ambulance driver could see each other. *Id.* The plaintiff proceeded into the intersection and was hit by the ambulance. *Id.*

The plaintiff filed suit and successfully obtained a verdict in her favor, with a jury finding that the ambulance driver's conduct was reckless. *See id.* However, the district court granted the defendants' motion for judgment notwithstanding the verdict, finding there was insufficient evidence to support the verdict. *Id.* at 333. In its ruling, the court noted the evidence showed it was daytime and sunny, traffic was heavy, the ambulance slowed down while approaching the intersection, red lights were flashing at the intersection, the ambulance driver checked traffic in both directions before proceeding, "other vehicles were able to either hear or see the ambulance as it approached," and the ambulance driver "had a clear view of the intersection and all traffic was stopped as he approached it." *Id.* at 334–35. On these facts, the court reasoned the driver did not create "a situation in which the risk of harm to others was probable." *Id.* at 337. The supreme court agreed in summary fashion, concluding: "The evidence in this case cannot be said to constitute substantial evidence of recklessness" to support the jury's verdict. *Id.* at 338.

*Fritz* also involved an emergency response at an intersection where the plaintiff was subject to a traffic control device. 2020 WL 6845944, at *2. In that case, a police officer was responding to a fight in progress. *Id.* The officer entered a two-lane highway, Highway 150, traveling north and "accelerated quickly with his lights and siren activated." *Id.* At least two vehicles, one traveling north and one traveling south, pulled off to the side of the roadway as the officer traversed the

highway. *Id.* The intersection of Highways 150 and 18 is a busy four-way stop. *Id.* The officer "claim[ed] he slowed slightly as he approached the intersection, which was clear, and made eye contact with [the plaintiff] who was stopped on the east side of the intersection before continuing through it." *Id.* Thinking that the plaintiff would yield to him, the officer "accelerated through the intersection, reaching speeds as high as 60 mph, and collided with [the plaintiff] approximately 272 feet north of it." *Id.*

> Leading up to the accident, [the plaintiff] was waiting at the stop sign of a business turnoff on the west side of Highway 150. He waited for over 15 seconds to let three vehicles pass, one northbound and two southbound. As the second southbound vehicle was passing, [the plaintiff] began driving straight across Highway 150 toward a gas station on the opposite side. A little more than four seconds later, [the plaintiff's] truck was broadsided by [the officer's] police SUV while crossing the northbound lane of Highway 150.

*Id.* at *3 (internal citations and footnote omitted).

The defendants in *Fritz* moved for summary judgment, arguing the claim of recklessness failed as a matter of law. *Id.* at *3. Though some of the evidence was disputed, like whether the officer's view was obstructed, the federal district court concluded "no reasonable jury could find [the officer] knew, or should have known, that his driving was so obviously dangerous that it was likely to cause an accident." *Id.* at *6. The court observed his "lane was clear as he approached and accelerated through the intersection"; "[h]e did not know, nor was it reasonably foreseeable, that a vehicle was likely to pull into his path"; "nearby vehicles were obligated to yield and it was reasonable for [the officer] to believe that they would do so." *Id.* The Eighth Circuit agreed with this reasoning on appeal, finding "the circumstances are almost identical" to *Bell*, since both involved an emergency

vehicle traversing a straight and clear lane while nearby motorists could hear a siren or see flashing lights. *Fritz*, 19 F.4th at 1070. If *Bell* did not involve recklessness, the court reasoned, then neither could *Fritz*. *Id.*

The district court likewise concluded that if neither *Bell* nor *Fritz* involved recklessness, then this case does not either. The court reasoned: "Similar to *Fritz*, while the officer's failure to see Mr. Penny's approach into the intersection may constitute negligence, he did not have reason to believe that any vehicle nearby was unlikely to yield to his emergency lights and siren, thus resulting in harm to another." But, unlike the plaintiffs in *Bell* and *Fritz*, Penny was not subject to a traffic control device and he was traveling at a high rate of speed on the highway that Dekker was attempting to cross. This is a key factual distinction from those cases on the question of recklessness.

With cross-traffic already stopped and the emergency vehicles using lights and sirens, it was safe for the emergency drivers in *Bell* and *Fritz* to assume that the clear lanes ahead of them would remain that way. As a result, they cannot be said to have unreasonably acted in disregard of a known risk "so great as to make it highly probable that harm would follow." *See Martinez*, 986 N.W.2d at 124 (citation omitted). The risk was created by the civilian drivers—who had been stationary—unforeseeably pulling out in front of the emergency vehicles, despite being subject to a traffic control device with the added duty to yield to the emergency vehicle under Iowa Code section 321.324.

Here, however, it was not safe for Dekker to assume the path in front of him was clear or would be clear because of motorists' duty to yield to him. Dekker claimed that he looked to his right before proceeding through the stop sign at the

intersection but did not see Penny approaching. He recalled seeing only one stationary light, which he thought was a farmhouse some distance away from the intersection. Yet opinions from Penny's experts state that Penny was fully visible from Dekker's vantage point and that Dekker should have seen him. *See Feld v. Borkowski*, 790 N.W.2d 72, 80–81 (Iowa 2010) (finding an expert's affidavit gave rise to a reasonable inference of recklessness in summary judgment proceedings). Penny testified to the same at his deposition, pointing out that Dekker was coming down a hill, from which he would have had an "eagle eye" view of the highway and Penny's approaching headlights, which were visible on video from the crash. The defendants offered no evidence to dispute these facts, aside from Dekker's conclusory statement that he "determined that nobody was there," even though Penny was. And it was undisputed that Penny was traveling around the speed limit of fifty-five miles per hour—a speed at which he would have trouble yielding to an emergency vehicle unexpectedly entering the highway from his left.

Viewing this evidence in the light most favorable to Penny, a reasonable jury could find that Penny was visible to Dekker and that Dekker did not sufficiently scan the intersection—if at all—before accelerating through the stop sign without braking. While Penny had a statutory duty to yield to Dekker under section 321.324(3), his failure to do so does not relieve Dekker "from the duty to drive with due regard for the safety of all persons using the highway." Iowa Code § 321.324(4). Emergency drivers can only run stop signs "after slowing down as may be necessary for safe operation," *see id.* § 321.231(3)(a), which could include coming to a full stop if the circumstances demand it, like where a vehicle that is not subject to a traffic control device is traveling at a high rate of speed on a highway

the emergency driver is trying to cross. If Dekker went through the intersection without sufficiently assessing it, which is a legitimate inference from evidence showing that Penny was visible from Dekker's vantage point and traveling at a non-yielding speed, then doing so could be considered an intentional act in disregard of a risk so obvious that Dekker must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. *Martinez*, 986 N.W.2d at 124.

Overall, we find a genuine issue of material fact remains on whether Dekker sufficiently scanned the intersection before proceeding through the stop sign consistent with his "duty to drive . . . with due regard for the safety of all persons," or whether his failure to do so amounted to "reckless disregard for the safety of others." Iowa Code § 321.231(5). Because reasonable minds could differ on whether Dekker acted recklessly, this is a triable issue for the jury to decide. *See Siesseger v. Puth*, 248 N.W. 352, 357 (Iowa 1933) ("Recklessness is an inference of fact to be drawn from the evidence offered, and is a matter for the determination of the jury."); *cf. Oddo v. City of Buffalo*, 72 N.Y.S.3d 706, 708 (N.Y. App. Div. 2018) (finding issue of whether officer sufficiently slowed down before intersection "presents an issue of fact whether he acted with reckless disregard for the safety of others"(citation omitted)); *Corallo v. Martino*, 873 N.Y.S.2d 102, 103 (N.Y. App. Div. 2009) (affirming denial of summary judgment where issues of fact remained on whether officer, against a red light, "checked for oncoming traffic before entering the intersection"); *Glenn v. Columbus*, 72 N.E.3d 124, 132 (Ohio Ct. App. 2016) (affirming denial of summary judgment because reasonable jury could conclude that emergency vehicle entering intersection against a red light "despite an

observable vehicle continuing to move toward the intersection, constituted reckless conduct"); *Zapata v. City of Gonzales*, No. 13-18-00065-CV, 2020 WL 486489, at *5 (Tex. App. Jan. 30, 2020) ("Under this version of events, Officer Tunis drove through the intersection on a red light without slowing his vehicle or waiting for the cross-traffic to yield. This evidence raises a fact issue as to whether Officer Tunis's conduct was reckless.").

## IV.    Conclusion

We reverse the entry of summary judgment and remand for further proceedings, concluding genuine issues of material fact remain that preclude the defendants' entitlement to judgment as a matter of law.

**REVERSED AND REMANDED.**

Chicchelly, J., concurs; Greer, P.J., dissents.

**GREER, Judge** (dissenting).

I dissent from the majority opinion and would affirm the grant of summary judgment given the application of these facts to the legal issues presented. Drilling down to the core issue, the city of Winterset and its police officer Christian Dekker argued there was no evidence from which a reasonable jury could find Dekker was reckless. The district court agreed. On appeal, James "Judd" Penny argues the district court referenced the correct standard of review but failed to apply it when it did not consider the facts in the light most favorable to Penny. With due consideration of that argument, the facts do not support a finding of recklessness on the part of the driver, Officer Dekker, and so summary judgment as a matter of law was appropriate.

To start, there is strong evidence that Officer Dekker's conduct was negligent in the operation of his police vehicle on the night of the accident with Penny. But that concession does not answer the question presented here. The key to this decision is the application of Iowa Code section 321.231, which gives Dekker, as the driver of an authorized emergency vehicle, certain privileges. *See* Iowa Code § 321.231(1) (2020). The driver of a police vehicle may (a) "[p]roceed past a . . . stop sign, but only after slowing down as may be necessary for safe operation" and (b) "[e]xceed the maximum speed limits so long as the driver does not endanger life or property." *Id.* § 321.231(3)(a), (b). Yet, the emergency vehicle driver must drive "with due regard for the safety of all persons," and the statute does not "protect the driver . . . from the consequences of the driver's . . . *reckless disregard* for the safety of others." *Id.* § 321.231(5) (emphasis added). While I recognize that this statute comes with "limitations that balance public safety

interests," the standard of care for claims under this section is "recklessness." *See Martinez v. State*, 986 N.W.2d 121, 123–24 (Iowa 2023).

With the standard at hand, we focus on Dekker's behavior to see if he willfully or wantonly disregarded the safety of others and whether the danger was so obvious from the facts that Dekker should have known or reasonably foreseen that harm would flow from his actions. *See Bell v. Cmty. Ambulance Serv. Agency for N. Des Moines Cnty.*, 579 N.W.2d 330, 335 (Iowa 1998). To set out examples of recklessness, *Bell* described two scenarios. In one case, a driver operated a vehicle with actual knowledge the brakes were virtually useless although earlier warned not to drive it. *Id.* at 335 (referencing *State v. Cox,* 500 N.W.2d 23, 26 (Iowa 1993)). Similarly, in the other case, a driver operated a vehicle knowing about its deteriorated brakes that caused him to run through a stoplight and into a school zone crosswalk, hitting a child. *Id.* (referencing *State v. Conyers,* 506 N.W.2d 442 (Iowa 1993)). As these cases highlight, the recklessness standard requires that we look to find if the actor "has *intentionally* done an act of an unreasonable character in disregard of a risk known to or so obvious that he must be taken to have been aware of it, and so great as to make it highly *probable* that harm would follow." *Thompson v. Bohlken,* 312 N.W.2d 501, 504–05 (Iowa 1981) (emphasis added) (quoting William L. Prosser, *Handbook of the Law of Torts* § 34 (4th ed.1971)). Requiring more than negligence or want of ordinary care, finding reckless behavior requires "evidence of defendant's knowledge, actual or chargeable, of danger and proceeding without any heed of or concern for consequences." *Bell*, 579 N.W.2d at 336. To support a fact question over recklessness, the majority lists cases involving intersection crashes in jurisdictions

where a recklessness standard applies and where summary judgment was denied. I find those distinguishable to this case because they involve congested intersections where an intent to enter with less than full vision of possible traffic involved a potentially reckless choice by the emergency vehicle operator.

Here, traffic was almost non-existent, it was dark out, and Officer Dekker was driving with flashing overhead lights and his siren on. He looked both ways before entering the intersection of North 10th Avenue and Highway 92 and spotted a light that he believed came from a farmhouse on the north side of Highway 92. Given that assessment, he believed no traffic to be coming from that direction that would impede his free travel through the intersection. From the other view, he recognized an approaching vehicle but assessed it as too far away to be a concern. It is unrefuted in the record that he believed the intersection was clear of any potential danger before entering. To me, these facts support Dekker's negligence, just as Penny was negligent for failing to see Dekker and pull over, and the lack of care on each of their parts did not involve intentionality as they both believed the intersection was clear.

This would be a far different case if the officer saw the car coming and wanted to beat it, went through a busy intersection without checking for vehicles that could not be seen, or assumed that a car would stop just because of the activated emergency lights and sirens—all behavior that might be considered reckless. "[R]ecklessness is a difficult standard to meet in Iowa." *Martinez*, 986 N.W.2d at 125 (citation omitted). It has not been met here.

Finally, I address Penny's argument that the facts in the light most favorable to him preclude summary judgment because he has two experts that support a

recklessness finding, thus there is a factual dispute to resolve at a trial. In a motor vehicle collision case, opinions should help establish facts in dispute and not answer a legal question. "[Q]uestions such as whether a defendant was negligent or not negligent are improper because '[e]xperts are not to state opinions as to legal standards.'" *Haskenhoff v. Homeland Energy Sols., LLC*, 897 N.W.2d 553, 600 (Iowa 2017) (citation omitted) (second alteration in original). To that point, the reckless standard is a legal question—not to be decided by expert. Yet, as the majority notes, an expert may provide a basis for a "reasonable inference of recklessness" for summary judgment purposes. *See Feld v. Borkowski*, 790 N.W.2d 72, 80–81 (Iowa 2010) (noting the expert's attempt to replicate the occurrence involving the thrown baseball bat causing injury led him to a conclusion that the batter "must have deliberately released the bat in a very abnormal, contorted act of recklessness" (emphasis added)).

So, we review what facts we know in the light most favorable to Penny. Along with expert opinions that Penny brought to the table, a formal investigation confirmed Dekker's speeds. Iowa State Trooper David Wonders investigated and authored a technical collision investigation report. He could only do a speed determination for Dekker's vehicle and noted:

> SPEED DETERMINATION: On April 16th, 2018, the ACM and PCM[7] were downloaded from Officer Dekker's vehicle. PCM information shows that approximately 5 seconds before the crash, Officer Dekker was traveling at 44 mph and was applying the brake. Approximately 2 seconds before the crash, Officer Dekker was traveling 30 mph with no brake applied. At the time of the collision, Officer Dekker was traveling approximately 25 mph with no brake applied.

---

[7] The only reference to explain these codes in the record is that they go to the vehicle's "black box information."

Penny certified in answers to interrogatories that he was traveling "possibly" twenty-five miles per hour when he entered the intersection. Later in his deposition, he changed that answer to assert his speed upon entry to the intersection was more likely forty-five to fifty-five miles per hour. His expert's report had him traveling between fifty to fifty-five miles per hour. Neither Penny nor Dekker saw the other. Penny's experts—Daniel Billington, a forensic expert, and Todd Hall, a technical accident investigator—offer facts Penny asserts raise a fact question over the recklessness claim. First, Hall opined "there is no evidence Officer Dekker was unable to see Judd Penny in the several seconds leading up to the collision—that he had enough time to stop because Penny was able to be seen." Again, Officer Dekker did not exercise due care when he failed to see Penny, but this failure does not lead to a recklessness finding, so Hall's report offers no evidence of recklessness. Next, Penny attached what appears to be a speed calculation graph (Crash Data Retrieval) but offered no report or affidavit that interprets the data or explains the findings. Again, all evidence confirmed that Officer Dekker was traveling in excess of the speed limit on an emergency call, but his speed is not reckless behavior under the circumstances without more. Assuming the intersection was clear of all traffic, as he and Penny believed, no one would label Dekker's speed alone as reckless.

Finally, most of the forensic expert Billington's opinions discussed Dekker's speed and that he failed to react appropriately to the Penny vehicle before reaching the intersection because he did not see Penny—noting Dekker was required to "expect the unexpected." The opinions that Dekker should have seen Penny are

those that support negligence and so while Penny's experts point out potentially negligent actions of Officer Dekker, they do not present a factual pattern that resembles reckless behavior as a matter of law. While it is clear both Dekker's and Penny's actions raise questions of negligence for failing to see each other, that negligent behavior cannot be elevated to recklessness without the intent requirement expressed in our case law. *See Dooley v. City of Cedar Rapids*, No. 09-1926, 2011 WL 1135794, at *5 (Iowa Ct. App. Mar. 30, 2011) ("[S]ection 321.231 requires a level of culpability beyond mere negligence to support liability."). In the end, all parties concede that Dekker was responding to an emergency call involving a non-responsive person, had emergency lights and sirens in operation, both parties failed to see the other before colliding, and Dekker was traveling in excess of the speed limit but slowed as he approached the intersection controlled by a stop sign impacting Dekker's travel. In the worst case, Dekker's actions were negligent, but there is no showing that elevates that behavior to recklessness.