# United States Court of Appeals

## For the Eighth Circuit

———————————————————

No. 20-3582

———————————————————

The Estate of Willys H. Fritz; Daniel W. Fritz, (on behalf of Leanne G. Fritz, decedent's surviving widow; Daniel W. Fritz, decedent's surviving adult son, and Susan G. Lueder, decedent's surviving adult daughter)

*Plaintiffs - Appellants*

v.

Bryson Henningar; City of West Union, Iowa

*Defendants - Appellees*

——————————

Appeal from United States District Court
for the Northern District of Iowa - Eastern

——————————

Submitted: September 23, 2021
Filed: December 8, 2021

——————————

Before SMITH, Chief Judge, GRUENDER and STRAS, Circuit Judges.

——————————

STRAS, Circuit Judge.

An emergency gave way to tragedy when Bryson Henningar's police cruiser crashed into Willys Fritz's truck.  We must determine whether a jury should decide

whether Henningar drove recklessly that day, or whether, as the district court[1] concluded, he was entitled to summary judgment. We affirm.

## I.

Before the accident, Henningar spoke to the manager of a nearby apartment complex, who reported a "fight in progress" between two tenants. After the call ended, Henningar left his house, activated his emergency lights, and headed down a two-lane Iowa highway toward the complex. Just moments later, with other vehicles already pulled over to the side of the road, he accelerated from 47 to 60 miles per hour as he crossed a four-way intersection.

On the other side of the intersection, just 270 feet away, was Fritz's truck, which was idling at a stop sign. As Henningar's police cruiser approached, the truck pulled out into the highway and tried to cross. The result was a violent broadside collision that led to Fritz's death.

Fritz's estate sued Henningar and the city of West Union in state court on several theories, including recklessness, *see* Iowa Code § 321.231, and a violation of Fritz's civil rights, *see* 42 U.S.C. § 1983. After the case was removed, the district court granted the defendants' motion for summary judgment.

## II.

We review the decision to grant summary judgment de novo. *See McCuen v. Polk Cnty., Iowa*, 893 F.2d 172, 173 (8th Cir. 1990). "Summary judgment is appropriate when the evidence, viewed in [the] light most favorable to the nonmoving party, shows no genuine issue of material fact exists and the moving

---

[1]The Honorable Leonard T. Strand, Chief Judge, United States District Judge for the Northern District of Iowa.

party is entitled to judgment as a matter of law." *Bharadwaj v. Mid Dakota Clinic*, 954 F.3d 1130, 1134 (8th Cir. 2020) (citation omitted).

A.

In Iowa, special rules apply to the operators of emergency vehicles. *See* Iowa Code § 321.231. While responding to "emergency call[s]," they can "[p]roceed past a red [light] or stop sign[] . . . after slowing down" and can "[e]xceed the maximum speed limits" if it "does not endanger life or property." *Id.* § 321.231(1), (3)(a)–(b). Certain traffic laws are relaxed, in other words, when a police officer like Henningar is responding to an "emergency." *Id.* § 321.231(1).

This so-called "privilege," however, has its limits. For one thing, traffic laws are relaxed only when an "audible" or "visual signaling device" is used, such as flashing lights or a siren. *Id.* § 321.231(4). Even then, Iowa law does not "relieve the driver . . . from the duty to drive . . . with due regard for the safety of" others. *Id.* § 321.231(5). And perhaps most importantly, it does not "protect the driver . . . from the consequences of the driver's . . . *reckless* disregard for the safety of others." *Id.* (emphasis added).

Hoping to take advantage of this narrow opening, Fritz's estate claims that Henningar's actions were reckless. *See Hoffert v. Luze*, 578 N.W.2d 681, 685 (Iowa 1998) (stating that the "legal standard of care" under Iowa Code § 321.231 is "recklessness"). But recklessness is a difficult standard to meet in Iowa. The estate must show that Henningar "intentionally [committed] an act of an unreasonable character in disregard of a risk known to or so obvious that he must be taken to have been aware of it." *Morris v. Leaf*, 534 N.W.2d 388, 391 (Iowa 1995). And even then, Henningar is only liable if the dangerous act was "so great as to make it highly probable that harm [would] follow." *Id.*

We agree with the district court that the evidence in this case does not even get past the first of these two steps. This conclusion follows from a case that the

Iowa Supreme Court decided nearly a quarter of a century ago. *See Bell v. Cmty. Ambulance Serv. Agency for N. Des Moines Cnty.*, 579 N.W.2d 330 (Iowa 1998). There, an ambulance responding to an emergency call approached an intersection with its lights and sirens activated. *Id*. at 334–35. From the driver's point of view, "[a]ll traffic was stopped and the intersection was clear." *Id.* at 335. Yet there too, when another vehicle tried to cross, the result was a massive broadside collision. *Id*.

At trial, the jury found that the ambulance driver had been reckless. *Id*. Relying on section 321.231, however, the trial court set aside the verdict, explaining that "[u]nder no stretch of the imagination [could] it be concluded that the driver of the ambulance was reckless." *Id.* at 338. "No danger" would have been "apparent," the court said, because "the road was straight," "[a]ll surrounding traffic had stopped," and witnesses "clearly saw or heard, or both saw and heard, the ambulance." *Id.* at 337. The Iowa Supreme Court agreed with the trial court's conclusion that, under these circumstances, the driver could not have known that someone else would attempt to cross "in front of" the ambulance. *Id*.

The emergency vehicle here is different, but the circumstances are almost identical. As Henningar's police cruiser approached the intersection, traffic had stopped, the road was straight, and the "lane ahead" was clear. *Id*. Multiple witnesses reported hearing a siren or seeing flashing lights. If the evidence was insufficient to establish the recklessness of the ambulance driver in *Bell*, then it follows that the evidence here cannot show that Henningar had "conscious knowledge of a dangerous situation" either. *Id.* Section 321.231, in other words, stands in the way of any state-law recovery for Fritz's estate.

B.

The lack of any "meaningful argument," on the other hand, is what stands in the way of addressing the estate's federal civil-rights claim. *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017); *see also* 42 U.S.C. § 1983. Other than a few conclusory statements about how "the [district] court improperly entered summary

judgment . . . on the § 1983 claim" and "should have allowed . . . [the] § 1983 claim . . . to proceed," the estate does not explain *how* the court erred.  Without more, there is nothing for us to decide.  *See Rotskoff v. Cooley*, 438 F.3d 852, 854–55 (8th Cir. 2006); *see also U.S. v. Wiggins*, 104 F.3d 174, 177 n.2 (8th Cir. 1997).

## III.

We accordingly affirm the judgment of the district court.

_____