# IN THE SUPREME COURT OF IOWA

No. 21–0980

Submitted October 13, 2022—Filed February 17, 2023

**AMBER MARTINEZ,** Individually and on behalf of her minor child **I.M.,** and **ISABEL ASHLEY,**

Appellees,

vs.

**STATE OF IOWA,**

Appellant.

Appeal from the Iowa District Court for Polk County, Samantha Gronewald, Judge.

The State seeks interlocutory review after the district court denied its motion for summary judgment in a case involving claims for injuries that resulted following a high-speed chase. **REVERSED AND REMANDED WITH INSTRUCTIONS.**

McDermott, J., delivered the opinion of the court, in which all participating justices joined. May, J., took no part in the consideration or decision of the case.

Brenna Bird, Attorney General, and David M. Ranscht (argued), Jeffrey C. Peterzalek, and Christopher J. Deist, Assistant Attorneys General, for appellant.

Molly M. Hamilton (argued) and Steve Hamilton of Hamilton Law Firm, P.C., Clive, for appellees.

**McDERMOTT, Justice.**

Scott Grimes escaped from the Warren County jail and, over the next week, went on a multi-state crime spree that included stealing cars in Iowa, Missouri, and Kansas. With the help of a federal task force, law enforcement eventually got a location on Grimes driving a stolen car on Interstate 80 in the Des Moines area. State Patrol Sergeant Brett Tjepkes, in a marked patrol car, and Iowa Department of Transportation Investigator Aaron Liebe, in an unmarked car, responded to a call about Grimes's location and began to tail him.

After several miles, Grimes exited the interstate and eventually made his way to Meredith Drive. From there, he turned onto a quiet residential side street. At that point, with no oncoming traffic in sight, Liebe attempted to pass and pull ahead of Grimes with Tjepkes simultaneously moving behind Grimes in an effort to trap Grimes's car in between. But Grimes recognized their tactic before Liebe and Tjepkes could finish getting into position. He quickly jerked a hard left, partially over the curb, and sped around Liebe's car. Tjepkes turned on his lights and siren and gave chase.

Grimes soon made his way back onto Meredith Drive. In this part of the city, Meredith Drive is a four-lane road with a posted thirty-five-miles-per-hour speed limit. And, at this time of day, about 5:45 p.m. on a Tuesday in August, it is well trafficked. In the span of about twelve city blocks, Grimes passed seven cars as he moved between the two right lanes, accelerating to close to ninety miles an hour and driving through a red light as he built a gap with Tjepkes.

When Grimes eventually came upon cars blocking both right lanes, he veered left into the oncoming lane of traffic to pass them. Seeing Grimes move into oncoming traffic, Tjepkes immediately ended his pursuit, narrating on his police radio, "They're in the wrong lane of traffic. I just shut it down. We have heavy traffic here, and they're in the wrong lane of traffic. I turned my lights off." Grimes's vehicle disappeared over a hill and out of view as he continued in the left lane.

But as Tjepkes crested the hill moments later, he found Grimes's vehicle had crashed head-on with another vehicle on the left side of the road. Tjepkes radioed for emergency medical assistance. Grimes was unhurt and quickly apprehended. But the sole occupant of the car he hit, Amber Martinez, suffered serious injuries in the crash. Martinez and her two children sued the State of Iowa, alleging that its law enforcement officer acted negligently by engaging in Grimes's pursuit, and that the officer's negligence caused Martinez's injuries and her children's loss of consortium.

After discovery in the case, the State moved for summary judgment. The State argued that Tjepkes owed no "particularized" duty to Martinez, that he didn't breach any duty to her even if one existed, and that he could not be held legally liable as the "cause" of the crash. The district court denied the State's motion, concluding that Iowa Code section 321.231(5) (2019) imposed on Tjepkes a duty of care to Martinez, and that genuine questions of material fact existed about whether Tjepkes acted with reckless disregard for public safety when he continued the pursuit of Grimes.

The State sought interlocutory review of the ruling, which we granted. For purposes of this appeal, we will assume without deciding that Tjepkes owed a duty to Martinez in the circumstances of this case. We turn to whether the State is nonetheless entitled to summary judgment in light of Iowa Code section 321.231. Consistent with the district court, we analyze Martinez's claims under the version of Iowa Code section 321.231 in effect when Martinez filed her lawsuit in 2019. As noted below, the legislature amended the statute in 2022, but those amendments have no bearing on our analysis.

Iowa law provides liability protections to drivers of emergency vehicles in certain situations, including "when in the pursuit of an actual or suspected perpetrator of a felony." *Id.* § 321.231(1). Emergency vehicles operating their lights or sirens have the right, for instance, to disregard the prescribed direction of traffic, to drive through stop signs or red lights without stopping, and to exceed posted speed limits. *Id.* § 321.231(2)(*b*), (3)(*a*)–(*b*). But these privileges come with limitations that balance public safety interests. Emergency vehicles may proceed through a stop sign or red light "only after slowing down as may be necessary for safe operation," and may exceed posted speed limits "so long as the driver does not endanger life or property." *Id.* § 321.231(3)(*a*)–(*b*).

The statute does not remove the duty of care on emergency vehicle drivers (and even police officers on bikes) while they respond to emergencies, stating:

> The provisions of this section shall not relieve the driver of an authorized emergency vehicle or the rider of a police bicycle from the duty to drive or ride with due regard for the safety of all persons, nor shall such provisions protect the driver or rider from the consequences of the driver's or rider's reckless disregard for the safety of others.

*Id.* § 321.231(5). An emergency vehicle operator who harms another person by driving with reckless disregard for the safety of others thus may be held liable for civil damages. *Morris v. Leaf*, 534 N.W.2d 388, 390–91 (Iowa 1995).

As the statute's text announces, the legal standard of care for claims brought under section 321.231 is recklessness. *Hoffert v. Luze*, 578 N.W.2d 681, 685 (Iowa 1998). To prove recklessness under the statute, a plaintiff must show that the officer "has intentionally done an act of an unreasonable character in disregard of a risk known to [the officer] or so obvious that [the officer] must be taken to have been aware of it." *Morris*, 534 N.W.2d at 391. And even then, the officer can be liable only if the dangerous act was "so great as to make it highly probable that harm would follow." *Id.*

In *Morris v. Leaf*, we addressed for the first time this question of liability to third parties when officers engage in a high-speed chase. *Id.* at 389. The plaintiffs sued a city and its police officer for injuries they suffered after a fleeing suspect crashed into their car while attempting to elude police. *Id.* The plaintiffs alleged that the officer had a duty to protect them from the acts of fleeing suspects and that the officer breached that duty by engaging the suspect in a high-speed chase. *Id.* at 390. Focusing on the "reckless disregard" language of section 321.231(5), we recognized that the statute allowed personal liability only for reckless, rather than merely negligent, conduct. *Id.* at 391. We observed that limiting personal liability to reckless conduct, as the statute did, advanced "vigorous law enforcement without placing innocent bystanders at undue risk." *Id.*

The undisputed facts in *Morris* established that the chase occurred on a clear afternoon at 2:15 p.m., when traffic wasn't heavy, the streets were dry, and the officer followed only fast enough to keep the fleeing vehicle in sight. *Id.* Police sought the suspect based on his involvement in a hit-and-run crash and the suspect was already speeding when the officer started his pursuit. *Id.* Under those facts, we determined that no liability existed against the city or its police officer as a matter of law. *Id.*

In this case, the district court denied the State's motion for summary judgment because it found a disputed issue of fact existed about whether Tjepkes's actions were reckless. The summary judgment record includes audio and video footage from the dashboard camera in Tjepkes's patrol vehicle. The video recorded all the events described above, from Grimes's slip of the trap attempted on the residential street and his high-speed maneuvering on Meredith Drive, to Tjepkes's narration of his decision to end the pursuit and call to dispatch when coming upon the scene of the crash. Tjepkes's pursuit of Grimes—from Grimes's escape maneuver around Liebe's car until Tjepkes called it off—lasted about 72 seconds.

The parties disagree on how closely the facts in this case resemble those in *Morris*. In both cases the weather was clear and the streets were dry. Both chases occurred during daylight hours—in *Morris* around 2:15 p.m. and in this case around 5:45 p.m. In both cases the pursuing officers drove at speeds to keep the suspect's vehicle in sight, not necessarily to tail its bumper.

In distinguishing *Morris*, the district court recited that in that case traffic was noted to be light, while in this case traffic was heavier. But these relative characterizations of traffic load are important only insofar as they illuminate the risk of harm to others. And on that score, Tjepkes's dashcam video reveals that traffic on Meredith Drive was far from congested. Again, over the span of about twelve city blocks from his reentry onto Meredith Drive until veering into the left lane, Grimes passed only about seven vehicles. He was able to get to a high speed because of the large gaps between vehicles. It wasn't until he eventually came upon two sets of cars traveling about the same speed (and thus blocking the two rights lanes) that he veered left into oncoming traffic. And it was at that moment that Tjepkes terminated his pursuit and turned off his lights and siren.

As the United States Court of Appeals for the Eighth Circuit recently observed, "recklessness is a difficult standard to meet in Iowa." *Fritz v. Henningar*, 19 F.4th 1067, 1069–70 (8th Cir. 2021). It means something more than "the mere unreasonable risk of harm in ordinary negligence." *Bell v. Cmty. Ambulance Serv. Agency*, 579 N.W.2d 330, 335–36 (Iowa 1998) (quoting *Thompson v. Bohlken*, 312 N.W.2d 501, 504 (Iowa 1981) (en banc)). It requires proof of an act "in *disregard of* a risk" known to the officer or "*so obvious* that he must be taken to have been aware of it." *Morris*, 534 N.W.2d at 391 (emphasis added). Tjepkes's decision to shut down his pursuit when he saw Grimes shift into the left lane demonstrates an *appreciation*—not disregard—of the distinct risk that Grimes's decision to drive against the flow of traffic presented.

Tjepkes's pursuit of Grimes for the limited time it lasted does not meet the high bar necessary to prove *reckless* conduct. If the legislature wanted to prevent, or more severely curb, law enforcement officials from pursuing fleeing suspects in vehicles, it could have imposed strict liability or another standard that doesn't require plaintiffs to prove reckless conduct. But identifying recklessness as the standard in section 321.231, as the legislature did, reflects a policy choice to impose a heightened burden on the plaintiff.[1] And it's in meeting that heightened standard with the evidence marshaled here that Martinez's claim fails.

On the record before us—and particularly in view of the dashcam video enabling us to see the pursuit from start to finish—we conclude that no reasonable jury could find Tjepkes knew or should have known that the risk of pursuing Grimes was "so great as to make it highly probable that harm would follow." *Id.* at 391; *see Fritz,* 19 F.4th at 1070 (holding that an emergency vehicle that crashed into another vehicle while speeding through an intersection with siren and flashing lights activated is "insufficient to establish . . . recklessness" under Iowa law); *see also Mfon v. County of Dutchess*, 722 F. App'x 46, 48 (2d Cir. 2018) (finding no recklessness after a ten-minute chase in which the suspect "illegally passed other vehicles, ran five red lights, and . . . drove the wrong way

---

[1]Amendments to § 321.231 in 2022 further reinforced the legislature's policy choice of "recklessness" as the standard of care. The word "recklessly" was added to § 321.231(3)(*b*) to state that drivers of emergency vehicles may "[e]xceed the maximum speed limits so long as the driver does not *recklessly* endanger life or property." 2022 Iowa Acts ch. 1087, § 3 (to be codified at Iowa Code § 321.231(3)(*b*) (2023)) (emphasis added). Section 321.231(4) was amended to exempt emergency vehicle drivers from using lights and siren if, among other things, the action "does not *recklessly* endanger persons or property." *Id.* (to be codified at Iowa Code § 321.231(4)(*b*)) (emphasis added).

around a traffic circle"); *Delgado v. Pawtucket Police Dep't*, 668 F.3d 42, 53 (1st Cir. 2012) (finding no recklessness when "police did little more than attempt for a couple of minutes to keep a fleeing car in sight"); *Robbins v. City of Wichita*, 172 P.3d 1187, 1190–91, 1198 (Kan. 2007) (finding no recklessness in a two-minute chase through residential areas that reached speeds of seventy miles an hour).

Martinez also argues that the entire pursuit—starting with Tjepkes decision to pursue Grimes—was unreasonable because the gravity of Grimes's crimes did not outweigh the safety risks to the public inherent in any high-speed chase. The decision to chase *in itself*, under this argument, shows a "reckless disregard for the safety of others." Iowa Code § 321.231(5). But in *Morris*, we said that section 321.231 addresses "the officer's manner of driving" rather than "his decision to pursue." *Morris*, 534 N.W.2d at 390. Even were we to assume, without deciding, that the statute provides a claim for an officer's failure to appropriately balance harms, no reasonable jury could find that Tjepkes's decision to pursue Grimes as he did was reckless. Tjepkes testified that he was aware that Grimes was a fugitive, had some history of violence, and had stolen multiple vehicles. A federal warrant had been issued for Grimes's arrest, and a federal task force was assisting in the hunt for him. These facts, taken together, present a sufficient public safety threat to make Tjepkes's pursuit of Grimes, if not reasonable, certainly far short of reckless conduct as a matter of law.

No reasonable jury could find that the officer's pursuit of Grimes meets the high bar for recklessness under Iowa law. We reverse the district court order

denying the State's motion for summary judgment and remand to the district court to enter summary judgment in favor of the State.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**

All justices concur except May, J., who takes no part.