# IN THE SUPREME COURT OF IOWA

No. 22–1026

Submitted November 16, 2023—Filed December 29, 2023

**JAMES R. PENNY,**

Appellant,

vs.

**CITY OF WINTERSET** and **CHRISTIAN DEKKER,**

Appellees.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Madison County, Stacy Ritchie, Judge.

The defendants seek further review of a court of appeals decision reversing a district court's grant of summary judgment. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Christensen, C.J., delivered the opinion of the court, in which all justices joined.

Gary Dickey (argued) of Dickey, Campbell & Sahag Law Firm, PLC, Des Moines, for appellant.

Zachary D. Clausen (argued) and Douglas L. Phillips of Klass Law Firm, L.L.P., Sioux City, for appellees.

**CHRISTENSEN, Justice.**

The plaintiff brought an action for damages caused by a collision with the defendant police officer who was responding to an emergency call. The district court granted summary judgment in favor of the defendants and the court of appeals reversed the district court's entry of summary judgment. We must determine whether the police officer's conduct rose to the level of recklessness required under Iowa law. On further review, we affirm the district court's entry of summary judgment and conclude that the police officer's conduct was not reckless.

**I. Background Facts and Proceedings.**

Christian Dekker, a police officer for the City of Winterset, was home on his dinner break when he received a call at approximately 8:20 p.m. indicating there was an unresponsive female in the parking lot of a local motel. Officer Dekker responded to the call with his overhead lights and siren on. While Officer Dekker was driving northbound on North 10th Street toward its intersection with Highway 92, James Penny was traveling westbound on Highway 92. North 10th Street has stop signs that control northbound and southbound traffic. Highway 92 runs east to west and has no traffic control devices. The speed limit on North 10th Street is twenty-five miles per hour, and the speed limit on Highway 92 is fifty-five miles per hour.

As Penny neared the intersection, he pulled off to the side of the road to yield to another emergency vehicle that was traveling westbound toward him on Highway 92 with its lights and siren on. The emergency vehicle turned left and proceeded north on 10th Street. Penny then resumed driving on the highway at approximately fifty to fifty-five miles per hour. Meanwhile, as Officer Dekker approached the intersection, he slowed and looked to his left and right. He observed a car to his left that had either stopped or was a reasonable distance

away from the intersection. When he looked to his right, Officer Dekker noted a light in the distance but perceived it to be coming from a nearby farmhouse. Based on his observations, Officer Dekker believed it appropriate to proceed through the intersection without making a full stop at the stop sign.

Officer Dekker drove through the intersection at approximately twenty-five to thirty miles per hour with no brake applied. At the same time, Penny, who was still driving approximately fifty to fifty-five miles per hour, also entered the intersection. Penny admitted that he looked toward the first emergency vehicle as he approached the intersection but did not look to his left where Officer Dekker was approaching. Neither Officer Dekker nor Penny saw one another, and their vehicles collided at the intersection of Highway 92 and North 10th Street. As a result of the collision, Penny sustained a traumatic brain injury, a lower-back fracture, and an injury to his right knee. Officer Dekker sustained cuts and abrasions to his head.

Penny filed a petition alleging Officer Dekker was reckless and that the City of Winterset was vicariously liable for the alleged recklessness. The defendants filed a motion for summary judgment, arguing that no reasonable jury could find that Officer Dekker acted recklessly. Penny filed a resistance and a motion to strike the defendants' motion as untimely. The district court granted the defendants' motion. Penny timely appealed. We transferred the case to the court of appeals, which reversed the entry of summary judgment and remanded for further proceedings. We granted the defendants' application for further review.

## II. Standards of Review.

"We review a district court ruling on a motion for summary judgment for correction of errors at law." *Jahnke v. Deere & Co.*, 912 N.W.2d 136, 141 (Iowa 2018) (quoting *Homan v. Branstad*, 887 N.W.2d 153, 163 (Iowa 2016)). Summary judgment is appropriate if "the moving party has shown 'there is no genuine

issue as to any material fact and the moving party is entitled to judgment as a matter of law.' " *Id.* (quoting *Homan*, 887 N.W.2d at 163). A fact is material if it might affect the outcome of the lawsuit. *Nelson v. Lindaman*, 867 N.W.2d 1, 6 (Iowa 2015) (citing *Wallace v. Des Moines Indep. Cmty. Sch. Dist. Bd. of Dirs.* 754 N.W.2d 854, 857 (Iowa 2008)). "An issue is 'genuine' if the evidence in the record 'is such that a reasonable jury could return a verdict for the non-moving party.' " *Id.* (quoting *Wallace*, 754 N.W.2d at 857). We review "the record in the light most favorable to the nonmoving party, drawing all legitimate inferences that may be drawn from the evidence in his or her favor." *Homan*, 887 N.W.2d at 164 (citing *C & J Vantage Leasing Co. v. Wolfe*, 795 N.W.2d 65, 73 (Iowa 2011)).

### III. Analysis.

On further review, the defendants argue that the court of appeals erred in overturning the district court's order granting summary judgment in favor of Officer Dekker and the City of Winterset on Penny's claim of recklessness under Iowa Code section 321.231 (2020). The defendants challenge the court of appeals' conclusion that a genuine issue of material fact exists as to whether Officer Dekker's actions leading up to the collision were reckless. In so holding, the court of appeals relied on *Bell v. Community Ambulance Service Agency*, 579 N.W.2d 330 (Iowa 1998), and *Estate of Fritz v. Hennigar*, 19 F.4th 1067 (8th Cir. 2021), which the defendants maintain articulate a recklessness standard that conflicts with the court of appeals decision. Instead, the defendants argue that *Bell* and *Fritz* require a determination that no reasonable jury could have found Officer Dekker's actions reckless.

Iowa Code section 321.231 provides liability protections to drivers of emergency vehicles in certain situations, including "when responding to an emergency call."[1] Emergency vehicles operating their lights or siren have the right to drive through stop signs without stopping, "but only after slowing down as may be necessary for safe operation," and to exceed posted speed limits, "so long as the driver does not endanger life or property." *Id.* § 321.231(3)(*a*)−(*b*). However, the liability protections are not without limitations. The statute imputes a duty of care on emergency vehicle drivers when responding to emergencies, stating:

> The provisions of this section shall not relieve the driver of an authorized emergency vehicle or the rider of a police bicycle from the duty to drive or ride with due regard for the safety of all persons, nor shall such provisions protect the driver or rider from the consequences of the driver's or rider's reckless disregard for the safety of others.

*Id.* § 321.231(5). Meaning, "[a]n emergency vehicle operator who harms another person by driving with reckless disregard for the safety of others thus may be held liable for civil damages." *Martinez v. State*, 986 N.W.2d 121, 124 (Iowa 2023) (citing *Morris v. Leaf*, 534 N.W.2d 388, 390–91 (Iowa 1995)).

Under Iowa Code section 321.231(5), the standard of care is recklessness. *See Martinez*, 986 N.W.2d at 124 (citing *Hoffert v. Luze*, 578 N.W.2d 681, 685 (Iowa 1998)). "[R]ecklessness is a difficult standard to meet in Iowa," *Fritz*, 19 F.4th at 1070, as "[i]t means something more than 'the mere unreasonable risk of harm in ordinary negligence,' " *Martinez*, 986 N.W.2d at 125 (quoting *Bell*, 579 N.W.2d at 335). To prove recklessness, a plaintiff must show the operator of the emergency vehicle "intentionally [did] an act of an unreasonable character in

---

[1]We analyze Penny's claims under the version of Iowa Code section 321.231 in effect when Penny filed his lawsuit in 2020. "[T]he legislature amended the statute in 2022, but those amendments have no bearing on our analysis." *Martinez v. State*, 986 N.W.2d 121, 123 (Iowa 2023); *see also* 2022 Iowa Acts ch. 1087, §§ 1–4 (codified at Iowa Code § 321.231 (2023)).

disregard of a risk known to or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow." *Morris*, 534 N.W.2d at 391.

We have determined what constitutes recklessness under Iowa Code section 321.231 in the context of high-speed chases, but our decisions regarding the issue of recklessness in emergency response scenarios are limited. In *Bell*, we addressed whether an ambulance driver's conduct was reckless. 579 N.W.2d at 334–37. The ambulance driver was transporting an elderly patient to the hospital with his lights and siren activated while driving approximately forty miles per hour. *Id.* at 332. At his request, the traffic lights on Roosevelt Avenue were changed to flashing red in all directions. *Id.* The driver of another vehicle, Bell, approached the heavily trafficked intersection of Kirkwood and Roosevelt, stopped at the flashing red lights, and checked for traffic in both directions. *Id.* Neither the ambulance driver nor Bell could see each other due to the presence of traffic in the left turn lane of Roosevelt Avenue. *Id.* Bell proceeded through the intersection, where she was hit by the ambulance. *Id.*

The jury found that the ambulance driver's conduct was reckless. *Id.* at 334. The district court entered a judgment notwithstanding the verdict for the ambulance driver, noting that the ambulance driver had driven the same route "hundreds of times in the same manner" and no accident had ever occurred, traffic was relatively heavy but all vehicles had stopped, he had a clear lane through which he could proceed through the intersection, his speed was not excessive given the circumstances and he slowed down as he approached the intersection, it was a bright sunny day, and he was "alert, careful, [and] cognizant of his environment." *Id.* at 337.

The district court stated that "[b]ecause all traffic was stopped and the lane ahead was clear," the ambulance driver did not have conscious knowledge

of a dangerous situation and he could not have predicted Bell would create a dangerous situation by proceeding through the intersection. *Id.* Further, because he had driven the same route successfully, it could not be said that he had created a situation in which the risk of harm to others was probable. *Id.* Therefore, the district court held that it could not be found that the driver of the ambulance was reckless. *Id.* at 338. We agreed with the district court and held that the evidence presented did not "constitute substantial evidence of recklessness" in the driving conduct of the ambulance driver to support the jury's verdict. *Id.*

Relatedly, in *Fritz*, the United States Court of Appeals for the Eighth Circuit addressed whether a police officer's conduct was reckless when his police cruiser crashed into Fritz's truck, which resulted in Fritz's death. 19 F.4th at 1069–70. Officer Hennigar was responding to an emergency call with his lights and siren activated. *Est. of Fritz v. Hennigar*, No. C19–2046–LTS, 2020 WL 6845944, at *2 (N.D. Iowa 2020). Three vehicles ahead of him moved off the road as he approached the intersection of Highway 150 and Highway 18, traveling at approximately forty-four to fifty-one miles per hour. *Id.* The intersection of Highways 150 and 18 had a four-way stop and was one of the busiest intersections in the area. *Id.*

Fritz was at the stop sign on the west side of Highway 150 where he waited over fifteen seconds to allow three vehicles to pass, one northbound and one southbound. *Id.* at *3. Fritz then attempted to drive straight across Highway 150 when he was broadsided by Officer Hennigar's police SUV that was crossing the northbound lane of Highway 150. *Id.* Crash data retrieval software from Officer Hennigar's vehicle indicated that from five to two seconds before the collision, the "SUV accelerated from 47 mph to 60 mph with the accelerator pedal fully pressed down and the engine throttle at 99%." *Id.* Two seconds before the collision, Officer Hennigar removed his foot from the accelerator, applied the brakes,

and continued to decelerate the final two seconds before the collision. *Id.* He was traveling approximately thirty-four miles per hour at the time of the collision. *Id.*

The district court determined that no reasonable jury could find that Officer Hennigar's driving was reckless under Iowa Code section 321.231 and granted the defendants' motion for summary judgment. *Id.* at *7–8. Relying on *Bell*, the Eighth Circuit affirmed the district court's ruling, stating that there was no evidence to show Officer Hennigar had "conscious knowledge of a dangerous situation," and his driving, therefore, was not reckless under Iowa Code section 321.231. *Fritz*, 19 F.4th at 1070 (quoting *Bell*, 579 N.W.2d at 337).

Penny argues that *Bell* and *Fritz* are not analogous to the present case. We disagree. Like *Bell*, Officer Dekker was responding to an emergency with his lights and siren activated, and he had a clear lane through which he could proceed through the intersection. While he had been speeding, which he was permitted to do under Iowa Code section 321.231(3)(*b*), Officer Dekker slowed down considerably as he approached the intersection. The speed limit was twenty-five miles per hour, and just two seconds before the collision, he was traveling thirty miles per hour, only five miles per hour over the speed limit. At the time of the collision, he was traveling twenty-five miles per hour directly in accordance with the speed limit. Just as in *Bell*, given the circumstances, Officer Dekker's speed was not excessive. Further, his decision to slow down evidences his intent to proceed through the intersection with caution, which is supported by his deposition testimony that said, "had I seen him, I would have braked. I'm not in the line of hurting myself or other people."

Penny further contends that *Bell* and *Fritz* are distinguishable from this case because they involved an intersection controlled in all four directions, whereas here, Penny was not subject to a traffic control device, but Officer Dekker was. However, in *Bell*, the intersection was heavily trafficked,

demonstrating the need for flashing red lights, and in *Fritz*, the intersection of Highways 150 and 18 was one of the busiest intersections in the area, showing the need for a four-way stop. Here, it was nighttime, and the traffic was light. While Officer Dekker did not come to a complete stop at the stop sign, he was not required to do so under Iowa Code section 321.231(3)(*a*) if he slowed down to a speed "necessary for safe operation." Based on Officer Dekker's observations, to the left there was a vehicle stopped or a safe distance away from the intersection, and to his right, there was a light he perceived to be coming from a farmhouse, not a vehicle. Not only did he testify in his deposition that he perceived the light to be coming from the farmhouse, but that same observation was included in his written report completed two hours after the collision. When looking at the map of the intersection, the farmhouse is clearly visible and is near the area marked by counsel to indicate where Penny had previously slowed for the first emergency vehicle. Importantly, no evidence was offered to rebut the assertion that Officer Dekker looked both ways before proceeding through the intersection.

Penny's expert reports opine that based on the dash camera footage from Officer Dekker's vehicle,[2] Penny was fully visible from Officer Dekker's vantage point and that because of his speed, Officer Dekker failed to provide himself enough time to confirm where the lights were coming from or to react appropriately at the intersection. Penny contends that these two expert reports support a finding of recklessness, which shows there is a factual dispute to resolve at trial. It is true that expert opinions may give "rise to a reasonable inference of

---

[2]The dash camera footage from Officer Dekker's vehicle was not submitted as evidence on the motion for summary judgment. Therefore, the footage is not on the record before us and is not considered in our analysis, except for the opinions provided by the experts who reviewed it.

recklessness," *Feld v. Borkowski*, 790 N.W.2d 72, 81 (Iowa 2010); however, there must still be evidence that Officer Dekker intentionally committed an unreasonable act "in disregard of a risk known to or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow," *Morris*, 534 N.W.2d at 391. That is not present here. While it may have been negligent for Officer Dekker not to have perceived the lights to his right as coming from Penny's vehicle rather than a farmhouse, this failure does not rise to the level of recklessness.

Whether Officer Dekker actually saw Penny is not the issue. Based on Penny's deposition testimony, other vehicles had pulled off along North 10th Street to yield to Officer Dekker. There was no evidence that he was not alert, careful, or cognizant of his environment. In fact, after arriving at the hospital, Officer Dekker requested that his blood sample be taken, presumably to confirm he was alert and aware of his environment. Given the circumstances, slowing to approximately thirty miles per hour before proceeding through the intersection was an appropriate speed for safe operation.

With his lights running and siren blaring, Officer Dekker saw traffic to his left that was either stopped or far enough away from the intersection not to be a problem and saw a light to his right that he believed to be coming from a nearby farmhouse. He slowed to a speed that was reasonable before proceeding through the intersection, and he had a clear lane through which he could proceed. Based on the evidence presented, Officer Dekker did not have conscious knowledge of a dangerous situation as he had no reason to predict that Penny would have proceeded through the intersection. *See Bell*, 579 N.W.2d at 337; *Fritz*, 19 F.4th at 1070. Thus, it cannot be said that Officer Dekker intentionally disregarded a risk known to him or a risk so obvious that he must have been aware of it. *See*

*Morris*, 534 N.W.2d at 391. At most, Officer Dekker's conduct created an unreasonable risk of harm, but recklessness requires more. *See Martinez*, 986 N.W.2d at 125. Therefore, Officer Dekker's conduct does not meet the high bar for recklessness under Iowa law.

**IV. Conclusion.**

For these reasons, we affirm the district court's order granting the defendants' motion for summary judgment.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**